HAEHL v. THE WABASH RAILROAD COMPANY,
*Appellant.*

Division One, December 23, 1893.

</div>

1. **St. Louis Circuit Court**: ASSIGNMENT OF CAUSES: GENERAL AND
   SPECIAL TERM.  Under the constitution, article 6, section 27, and the
   statutes enacted in pursuance thereof (R. S. 1889, p. 2147, sec. 12)
   all causes in the St. Louis circuit court are triable before the single
   judges sitting in special term after assignment of the same to them
   by the majority of the judges constituting the general term.

2. ———: ———: ———: SPECIAL JURY.  After such assignment of a
   cause the judge to whom it has been made has exclusive authority
   and jurisdiction over it and application cannot be made to an asso-
   ciate judge of another room for an order for a special jury.

3. ———: ———: ———: ———: BILL OF EXCEPTIONS.  The denial
   of such application for an order for a special jury, so made to another
   judge, is not open for review on a bill of exceptions signed by him
   and copied into the record of the appeal from the judgment rendered
   by the judge before whom it was tried.

4. **Railroad**: SERVANT: KILLING TRESPASSER.  Where the servant of a
   railroad company employed to keep trespassers off of one of its
   bridges while in the course of his employment wrongfully shoots
   and kills a trespasser, the company will be liable.

5. ———: ———: ———.  The doctrine of *respondeat superior* stated.

6. **Exemplary Damages**: CORPORATION: STATUTE: Exemplary dam-
   ages may be recovered against a corporation in an action founded on
   Revised Statutes, 1889, sections 4426, 4427, for the wrongful killing of
   a person by its servant in the course of his employment where the
   wrongful act was willful, reckless, wanton, oppressive or malicious.

7. ———: ———: ———.  The doctrine of the case of *Rouse v. Railroad*,
   41 Mo. App. 298, criticized and denied.

119  325
124  105
59a  366
119  325
132  347
119  325
68a   98
119  325
71a  611
72a  110
119  325
149  111
77a  117
119  325
152  487
119  325
153  318
119  325
f156  492
119  325
f84a 582
85a   32
119  325
88a   80
119      325
99a  4506
99a  4507
100a  4  74
119      325
102a  4351
102a  6611
102a   693

8. **Evidence:** ACTION FOR WRONGFUL DEATH: HARMLESS ERROR: The fact that in an action by a widow under Revised Statutes, 1889, sections 4426, 4427 for the wrongful killing of her husband by defendant, evidence is admitted that plaintiff had but one child and that she was dependent on her husband for support is no ground for a reversal of the judgment.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*F. W. Lehmann* and *Geo. S. Grover*, for appellant.

(1) The court erred in overruling defendant's application for a special venire. R. S. 1889, secs. 6089, 6570; *Littleton v. Christy*, 11 Mo. 391; *Hahn v. Dierkes*, 37 Mo. 574; *Co. v. Hucht*, 32 Mo. App. 153; *City v. Bambrick*, 41 Mo. App. 648; *Magnusson v. Williams*, 111 Ill. 450; *Womack v. McAhren*, 9 Ind. 6; *Robinson v. Foster*, 12 Iowa, 186; *Conklin v. Marshalltown*, 66 Iowa, 122; *State v. Wild*, 39 Minn. 426; *White v. Ins. Co.*, 15 Neb. 660; *Charles v. Stansbury*, 3 Johns. 261; *In re Carhart*, 2 Dem. 627; *Taylor v. Corbiere*, 8 How. Pr. 385; *Taylor v. Harris*, 82 N. C. 25; *Marks v. Russell*, 40 Pa. St. 372; *Duffy v. Ogden*, 64 Pa. St. 240. (2) There was no evidence that the killing of Haehl was wrongful, or that it was done by Hill in the course of his duty as bridge watchman. *Nichols v. Winfrey*, 79 Mo. 544; *City v. Bingham*, 31 N. E. Rep. (Ind.) 383; *Snyder v. Railroad*, 60 Mo. 413; *Cousins v. Railroad*, 66 Mo. 572; *Sherman v. Railroad*, 72 Mo. 62; *Jackson v. Railroad*, 87 Mo. 422; *Stringer v. Railroad*, 96 Mo 299; *Farber v. Railroad*, 22 S. W. Rep. 631; *Golden v. Newbrand*, 52 Iowa, 59; Wood's Master and Servant, p. 586; *Allen v. Railroad*, L. R. 6 Q. B. 65; *Walker v. Railroad*, L. R. 5 C. P. 640; *Garvey v. Ding*, 30 How. Pr. 315; *Railroad v. Wetmore*, 19

Ohio St. 110; *Peavey v. Railroad*, 37 Am. and Eng. R. R. Cases, 114. (3) Proof of the mere fact of the homicide was not presumptive proof that it had been wrongfully committed, and the jury should have been so instructed. *State v. Hickman*, 95 Mo. 322, and cases cited under second point. (4) The instructions upon the subject of self-defense asked by defendant should have been given. See cases cited under points 2 and 3. (5) The testimony as to the dependence of plaintiff upon her husband's earning for her support should have been excluded. *Overholt v. Veiths*, 93 Mo. 422; *Stephens v. Railroad*, 96 Mo. 207; *Schlereth v. Railroad*, 19 S. W. Rep. 1134; *Railroad, v. Bayfield*, 37 Mich. 205. (6) The instruction given by the court on the measure of damages was erroneous, because it did not limit the jury to a finding of pecuniary damages, and was, moreover, too general and vague. *Parson v. Railroad*, 94 Mo. 286; *Hawes v. Co.*, 103 Mo. 60; *Schaub v. Railroad*, 106 Mo. 74; *McGowan v. Railroad*, 109 Mo. 518. (7) The instruction as to exemplary damages was not a proper one in this case. *Perkins v. Railroad* 55 Mo. 201; *Malecek v. Railroad*, 57 Mo. 16; *Graham v. Railroad*, 66 Mo. 536; *Rouse v. Railroad*, 41 Mo. App. 298; *Railroad v. Prentice* 147 U. S. 101; Sedgwick on Damages, sec. 380.

*Nathan Frank* and *Charles W. Bates* for respondent.

(1) The overruling of defendant's application for special venire is no ground for reversal. *First.* Statutes in respect to impaneling of juries are directory, and, unless some prejudice to the party complaining is inferable from the circumstances, a failure to comply with the statutory provisions is not reversible error. *State v. Ward*, 74 Mo. 253; *State v. Breen*, 59 Mo. 413;

*State v. Jennings*, 98 Mo. 493; *Vierling v. Brewing Co.*, 15 Mo. App. 125. *Second.* Under the laws especially applicable to the city of St. Louis, it is within the discretion of the court to allow a special venire, and no error can be alleged upon its refusal. Act of March 17, 1885, Laws of 1885, p. 74, being section 29, title "Juries," p. 2169, Revised Statutes, 1889; *Manker v. Faulhaber*, 94 Mo. 430; *State v. Jennings*, 98 Mo. 493; *Savings Ass'n v. Edwards*, 47 Mo. 445; *Sanders v. Anchor Line*, 97 Mo. 26. *Third.* The application for special venire was not made in time, and, therefore, it was discretionary with the court to order it. R. S. 1889, sec. 6089; R. S. 1889, sec. 6570, clauses 1 and 4; R. S. 1889, sec. 29, p. 2169; *Taylor v. McKnight*, 1 Mo. 120; *Beaudean v. Cape Girardeau*, 71 Mo. 392; *Reynolds v. Railroad*, 64 Mo. 70; *Hodgson v. Banking House*, 9 Mo. App. 24; *Lerch v. Hill*, 21 S. W. Rep. (Tex.) 183; *Jones v. State*, 42 Ark. 93; *Stewart v. Meyer*, 54 Md. 454; *State v. Leabo*, 89 Mo. 247. *Fourth.* Application for the special venire was not made to the court where the case was pending, and hence was not properly made; in legal effect, not made at all. Const. of Mo., 1875, art. 6, sec. 27; R. S. Mo. 1889, secs. 8, 14, pp. 2147, 2148; *Voullaire v. Voullaire*, 45 Mo. 602. *Fifth.* No objection was made to the jury that was sworn to try the case; objection made after the trial is too late. *State v. Ward*, 74 Mo. 253. *Sixth.* No exceptions can be saved to the action of a court where this case is not pending. *Seventh.* Bill of exceptions cannot be filed in one court relating to action taken in or by another court. *Keen v. Schnedler*, 92 Mo. 516; *Jones v. Evans*, 80 Mo. 565. *Eighth.* A bill of exceptions is a nullity, unless signed by the judge before whom the exceptions were saved. *Sahlein v. Gum*, 43 Mo. App. 315. *Ninth.* The refusal of the special venire is not before this court for review,

because the bill of exceptions was not filed during the term at which the exception was taken, and there was no order of court nor agreement of parties allowing further time. R. S. 1889, sec. 2168; *State v. Hill*, 98 Mo. 570. (2) The demurrer to the evidence was properly overruled. *Otis Co. v. Railroad*, 112 Mo. 622; *Brill v. Eddy*, 22 S. W. Rep. (Mo.) 488; *Dickson v. Waldron*, 34 N. E. Rep. (Ind.) 506; *Railroad v. Harris*, 122 U. S. 597; *Redding v. Railroad*, 3 S. C. 1; *Railroad v. Dickson*, 63 Ill. 151; *Perkins v. Railroad*, 55 Mo. 201; *Larson v. Railroad*, 110 Mo. 234; *Franke v. St. Louis*, 110 Mo. 516. (3) The instructions given fairly submitted the case to the jury; and there was no error in refusing defendant's instructions. See cases cited under point 2; *Bergeman v. Railroad*, 104 Mo. 77; *Haniford v. City of Kansas*, 103 Mo. 172. (4) The instruction upon the subject of self-defense was properly refused. There was no evidence upon which to base it. *Lillis v. Railroad*, 64 Mo. 464; *Bergeman v. Railroad*, 104 Mo. 77; *Barr v. City of Kansas*, 105 Mo. 550. (5) Testimony that plaintiff was dependent on her husband for support was properly admitted,—*first*, because this is a case justifying exemplary damages. *Beck v. Dowell*, 111 Mo. 506; *second*, because it tends to show plaintiff's loss in the death of her husband. *Tetherow v. Railroad*, 98 Mo. 74; *Soeder v. Railroad*. 100 Mo. 673; *Dayharsh v. Railroad*, 103 Mo. 570; *O'Mellia v. Railroad*, 21 S. W. Rep. (Mo.) 503, 507; *Railroad v. Leverett*, 48 Ark. 333; *Ewen v. Railroad*, 38 Wis. 613; *Opsahl v. Judd*, 30 Minn. 126; *Railroad v. Keane*, 32 N. E. Rep. 260; *Schlereth v. Railroad*, 21 S. W. Rep. (Mo.) 1110, 1114. (6) The instruction on the measure of damages was harmless, and is no ground for reversal. The verdict is justified by the evidence. *Blewett v. Railroad*, 72 Mo. 583; *McGowan v. Co.*, 109 Mo. 518; *Stoher v. Railroad*, 91 Mo. 509; *Tetherow v.*

*Railroad*, 98 Mo. 74; *Parsons v. Railroad*, 94 Mo. 286. (7) The facts in this case justify exemplary damages. *First.* Exemplary damages are allowed in actions under sections 4426 and 4427, Revised Statutes, 1889, where the circumstances are aggravating. *Gray v. McDonald*, 104 Mo. 303. *Second.* The act was wanton. *Beck v. Dowell*, 111 Mo. 506; *Perkins v. Railroad*, 55 Mo. 201; *Samuels v. Railroad*, 35 S. C. 493. *Third.* A railroad company, as any other person, is liable to exemplary damages for wrongs willfully or wantonly done by its servant in the course of his employment. *Hicks v. Railroad*, 68 Mo. 329; *Perkins v. Railroad*, 55 Mo. 201; *Alexander v. Relfe*, 74 Mo. 495; *Railroad v. Rosenzweig*, 113 Pa. St. 519; *Railroad v. Dunn*, 19 Ohio St. 162; *Goddard v. Railroad*, 57 Me. 202; *Railroad v. Blocher*, 27 Md. 277; *Quinn v. Railroad*, 29 S. C. 381; *Mfg. Co. v. Holdfodt*, 86 Ill. 455; *Gillingham v. Railroad*, 35 W. Va. 588; *Railroad v. Davis*, 12 S.W. Rep. (Ark.) 107; 3 Sutherland on Damages, p. 277; 1 Sedgwick on Damages [8 Ed.], sec. 380, and note *a*. Wood on Master and Servant [2 Ed.], 323.

BRACE, J.—This is an action to recover damages for the death of plaintiff's husband, Jesse Haehl, alleged to have been wrongfully assaulted and killed by defendant's servant, James W. Hill, on the seventeenth of March, 1891, on its railroad bridge at St. Charles, Missouri. The plaintiff had a verdict and judgment for $5,000 in the court below, and the defendant appeals. The answer admitted defendant's corporate existence; that the said Hill at the time was in its employ as watchman of said bridge, and denied the other allegations of the petition.

The suit was instituted in the circuit court of the city of St. Louis on the seventeenth day of September, 1891, returnable to the October term of said court.

The answer was filed October 5, 1891, and the cause set for trial in court room number 5 of said circuit court before Hon. Leroy B. Valliant, judge of said room, on Monday, the fourteenth of December, 1891. Afterwards, on Friday, the eleventh of December, 1891, Judge Valliant not holding court on that day, the defendant presented, without any notice to plaintiff or her attorneys, to Hon. James E. Withrow, judge of court room number 3, an application for a special jury accompanied with a deposit of $75, which on the same day was overruled by Judge Withrow.

On the fourteenth day of December, 1891, the cause, coming on in regular course in room number 5 before Judge Valliant, was called for trial, and the parties by their respective attorneys announced themselves ready, and remained subject to the orders of the court until the sixteenth of December, 1891, when a jury was called, duly impaneled and sworn, the evidence heard and the court, after refusing one instruction asked for by the plaintiff, and several asked for by the defendant, among which was one in the nature of a demurrer to the evidence, submitted the cause to the jury upon the following instructions given on its own motion:

"It appears from the evidence and the admissions in this case that the St. Charles bridge, on which the plaintiff alleges that her husband was killed, was a railroad bridge only, and not a public highway for foot passengers. The defendant had the right to keep foot passengers off the bridge, using for that purpose whatever force was reasonably necessary. But in the effort to keep foot passengers off the bridge, or to expel them from it when they were on it, the defendant had no right to use any more force than was reasonably necessary for that purpose.

"If you believe from the evidence that the plain-

tiff's husband, on the day he is alleged to have been killed, was on the bridge in question, and that James W. Hill was at that time acting in the performance of his duty as bridge watchman for the defendant, then the said watchman would have been justified in using a reasonable degree of force necessary and proper to accomplish the removal of the plaintiff's husband from said bridge, but if you believe from the evidence that the said Hill, in exercising his authority to remove the plaintiff's husband from said bridge, used more violence than was necessary, and willfully shot and killed said Haehl, plaintiff's husband, when it was unnecessary in order to remove him from said bridge, then the defendant is liable in this action, and your verdict should be for the plaintiff; but unless you do so find, your verdict should be for the defendant.

"If you find for the plaintiff, you should assess her damages in such sum as you deem fair and just to compensate her for whatever actual injury you may find from the evidence she has sustained resulting from the death of her husband.

"And if you believe from the evidence that the said killing was wanton or malicious, you may, if you see fit so to do, add to the sum you may assess as the plaintiff's actual damages such further sum, by way of punitive or exemplary damages, as you may believe from the evidence would be right and just, by way of punishment to the defendant, and as an example to the community, not exceeding, however, $5,000 in the total amount of your verdict."

On the trial it was admitted that the St. Charles bridge "was a railroad bridge and a part of the Wabash railroad, and is not a wagon bridge, nor a bridge crossed by foot passengers," and "that the length of the trestle of the St. Charles bridge on the St. Charles side, ending with the first overhead span,

rock pier, is one thousand, four hundred and forty-five feet and eight inches; that that portion of the bridge between the rock piers designated as overhead spans, and which crossed the river proper is a distance of two thousand, one hundred and seventy-seven feet and six inches; the trestle on the St. Louis county side, from the last rock pier to the dump or end of the bridge, of the St. Louis county side is two thousand, eight hundred and ninety-six feet by actual measurement; by 'trestle' is meant the approaches on either side." The defendant offered no evidence.

The evidence for the plaintiff tended to prove that the deceased at the time he was killed, was about thirty-two years of age, five feet and eight inches high, slightly built and weighing about one hundred and forty pounds; that he was a cigar maker by trade, having constant employment and earning from thirteen to fourteen dollars per week; that he resided with his family, consisting of the plaintiff and one child, a little girl aged about five years, in the city of Indianapolis; that he was a quiet and peaceable citizen of good reputation; that for some time before his death he had not been in good health and thought a change of climate would do him good, and on the morning of the seventh of March, 1891, he left his home in Indianapolis to go first to Decatur, Illinois. That was the last time his family and friends saw him alive, although his wife heard from him afterwards during his absence.

On the morning of the seventeenth of March, 1891, about 8 o'clock, he was seen crossing the St Charles bridge going from the St. Louis county side towards St. Charles; he had gone over the approach on the St. Louis side, the main bridge and a part of the approach on the St. Charles side, when he was met by James W. Hill, the defendant's bridge watchman and his brother. Hill, the watchman, motioned to him to go back; the

deceased not going back immediately, but remaining standing, Hill went up to him and spoke to him and some conversation passed between them, but what was said was not heard by any witness; it resulted however, in the deceased starting back, when Hill struck him on the back or shoulder twice with a club or billy, and the deceased commenced running back towards the St. Louis side, followed by Hill. They thus proceeded until the deceased had recrossed the trestle on the St. Charles side, the whole of the main bridge, and about one-half the approach on the St. Louis side, pursued by Hill, when they two being thus alone on that approach, Hill in the rear of deceased and distant about fifteen feet from and pursuing him, a pistol shot was fired, the ball striking the deceased in the back of the neck a little to the left of the median line and on a line with the base of the ears; passed "inward, downward, then upward through the *foramen magnum* into the base of the brain, producing death." Immediately afterwards Hill was seen running back, as fast as he could across the bridge towards the St. Charles side, where the bridge crew were engaged in their duties, and a few minutes thereafter, one or more of the crew went across the bridge and found the dead body of the deceased at the point indicated on the St. Louis approach. About nine o'clock, Hill delivered a pistol and billy to the sheriff of St. Charles county and about noon the body was removed from the bridge by the crew, and afterwards buried near the embankment at the end of the eastern or St. Louis approach. Afterwards the body was exhumed, an inquest held, and the body identified as that of the deceased.

The trial of the cause was completed and the verdict rendered on the seventeenth day of December; on the twenty-first day of December thereafter motions for new trial and in arrest of judgment were filed, which,

motions were taken under advisement by Judge Valliant, until the February term, at which term, and on the first day of February, 1892, they were each overruled and judgment entered on the verdict. On the second day of February thereafter, defendant filed its affidavit and bond for an appeal, the bond was approved, the appeal allowed, and leave given to defendant to file bill of exceptions on or before the first of March. On the twentieth of February, the defendant presented to the court its bill of exceptions which was allowed, signed and sealed by Judge Valliant, and made a part of the record on that day.

Afterwards, on the twenty-ninth of February, the defendant presented another bill of exceptions to Judge Withrow, setting forth his action as hereinbefore stated, overruling the application for a special jury, and prayed that it also might be signed, sealed and made a part of the record in this cause, which bill was on that day signed by Judge Withrow, and is copied into and certified as a part of the record in this cause.

I. The action of Judge Withrow on the eleventh of December in court room number 3, overruling the defendant's application for a special jury in this case, then set for trial on the fourteenth day of December in court room number 5 before Judge Valliant is complained of as error, for which it is urged the judgment rendered by Judge Valliant upon the verdict rendered by the jury by whom the case was tried, before him, and to whom no objection was made on the trial, should be reversed. The proceedings of the defendant before Judge Withrow without any notice to the plaintiff, is not brought to *our* notice by the bill of exceptions signed by Judge Valliant, who tried the case, and from whose judgment the appeal is taken, and to whose notice they seem not to have been brought before, at or during the trial, so far as anything appears in the

bill which he signed and sealed; but by another bill of exceptions signed by Judge Withrow after the term at which the case was tried, after the term at which he ruled upon the application made to him for a special jury in the case, and after the record of the proceedings of the trial of the case had been completed by the signing of a bill of exceptions by Judge Valliant. Whatever view may be taken of the nature of an application under the statute for a special venire, we do not see how the action of Judge Withrow, which is claimed to be erroneous, can be reviewed on this appeal. If the application is not to be regarded as belonging to the trial of the cause, but treated as preliminary thereto and independent thereof, then exception to the ruling thereon ought to have been saved by exception written, signed and filed during the term at which the ruling was made, which was not done. If on the contrary such an application and the ruling thereon be regarded as (no doubt it is) an incident of the trial of the cause, then Judge Withrow had no jurisdiction to entertain such application, and the case stands the same as if none had been made to him.

The St. Louis circuit court is composed of five judges, by the constitution article 6, section 27. It is provided that each of the judges of said circuit court "shall sit separately for the trial of causes and the transaction of business in special term. The judges of said circuit court may sit in general term, for the purpose of making rules of court, and for the transaction of such other business as may be provided by law, at such time as they may determine, but shall have no power to review any order, decision or proceeding of the court in special term." The statute carrying into execution this provision of the constitution, after defining what is a general term, providing for the organization of the court in such term and for its

making all necessary rules of court in such term to be
uniform for the government of the court at special
term to be held by each of the judges, further provides
that said court "may classify, arrange and distribute
the business thereof among the several judges, as the
majority of them may deem expedient, and each judge
shall attend to the business of the court in conformity
with the arrangement thereof made by the majority,
and when not occupied with the business assigned to
him, shall as far as practicable, aid the other judges,
to which end cases may be sent from one judge to
another at special term, as the individual judges may
agree and direct." R. S. 1889, p. 2147, sec. 12.

It will be observed from the foregoing provisions,
that all causes in the St. Louis circuit court are triable
by a single judge, sitting in special term; that they
become triable before such judge after they have been
assigned to him by a majority of his associates; that
after a case has thus been assigned to a judge for trial
in special term, the jurisdiction to try the same and to
transact such other business as is incident to the trial
thereof, is vested solely in such judge, and cannot be
exercised by any of his associates, unless the case itself
be sent to such associate in the manner provided by
law. In the trial of such assigned cases, each judge
holds the same distinct relation to the others as do the
several judges of the other circuit courts of the state
to each other in cases brought in their several courts;
in other words, each judge after the classification and
assignment of cases, holds the St. Louis circuit court
for the trial of such cases as are assigned to him, as
separately and distinctly from the circuit court held by
any of his brother judges of the city, as he does from
the circuit court held by his brother judges in any
other city or county of the state. *Voullaire v. Voul-
laire*, 45 Mo. 602.

This exclusive jurisdiction in the trial of a cause, must necessarily extend to the selection of a jury for such trial and such other matters as may rest in the breast of the judge who tries the case and be the subject of exception, and which may be embraced in a general bill of exceptions at the termination thereof. Otherwise, we have the strange anomaly presented in this case of a defeated party seeking to overthrow the judgment of the judge of the court who tried the case for no error committed by him or in the trial before him, or of which he was advised, but for an error in a proceeding remaining in the breast of another judge who did not try, and was not present at the trial, and which continued to so remain until after the trial, and the record thereof, was completed by the judge who did try it. This can not be permitted. The alleged error of Judge Withrow is not before us for review.

II. It is contended for the defendant that the court committed error in refusing defendant's instruction in the nature of a demurrer to the evidence, and in giving the instructions set out. In the argument of the learned counsel in support of this contention, three propositions are laid down which will be readily conceded: "That it was incumbent on plaintiff to prove: *first*, that her husband had been killed by Hill; *second*, that he had been killed wrongfully; *third*, that Hill in killing her husband was acting in the course of his employment."

It is apparent without argument upon the facts shown in evidence as they appear upon the face of the foregoing statement, that all these requirements were fully met by the plaintiff. In fact, it is not seriously contended that the evidence did not tend to prove that Hill did kill the plaintiff's husband, and that he killed him wrongfully, but it is urged that the instruction of the court authorized the jury to find that the killing

was wrongful from the mere fact of the homicide. We do not so read the instruction; in unmistakable terms it required the jury to find not only that Hill killed the deceased, but that he killed him willfully and unnecessarily, and such a killing is *ex vi termini* a wrongful killing. The instruction further required that the jury should find that Hill killed the deceased while engaged in the performance of his duty as the servant of the defendant.

Counsel for the defendant, after reviewing certain authorities in their brief, have placed us under obligations of making the following fair and lucid statement of the principle of liability in this case: "The principle of *respondeat superior* applies only when what is complained of was done in the course of the employment. The principal is responsible, not because the servant has acted in his name or under color of his employment, but because the servant was actually engaged in and about his business and carrying out his purposes. He is then responsible, because the thing complained of, although done through the agency of another, was done by himself; and it matters not in such cases whether the injury with which it is sought to charge him is the result of negligence, unskillful or of wrongful conduct, for he must choose fit agents for the transaction of his business. But if his business is done, or is taking care of itself, and his servant not being engaged in it, not concerned about it, but impelled by motives that are wholly personal to himself, and simply to gratify his own feeling of resentment, whether provoked or unprovoked, commits an assault upon another, when that has, and can have, no tendency to promote any purpose in which the principal is interested, and to promote which the servant was employed then the wrong is the purely personal wrong of the servant for which he, and he alone, is

responsible."

The evidence brings the case fairly within the principle here formulated. It is conceded that a part of the business which Hill was employed to perform as watchman, was to keep trespassers off of defendant's bridge; this necessarily involved the duty of putting them off after they got on, if they were found unwilling to go. The evidence tended to show that Hill was engaged in the performance of this duty when he fired the fatal shot; that the business was not done; that it was not taking care of itself, but that the defendant's servant at the time was engaged in it and concerned about it; that he shot *dum fervet opus*; and so far as evidence discloses, was concerned about, and engaged in, no other business. The court committed no error in refusing the demurrer to the evidence, nor in the instruction submitting the main issue to the jury. Thus we see that the court in the instructions given on its own motion, covered the three propositions upon which a recovery ought to have been predicated, according to the views of defendant's counsel.

These propositions were also contained in some of the instructions asked for by defendant and refused; but having been once given, such a refusal does not constitute ground for reversal.

In the other instructions refused, the court was asked to instruct the jury in substance, that if the homicide was committed by Hill in self-defense, or wantonly and maliciously, the plaintiff could not recover, unless the defendant authorized or sanctioned such wanton and malicious killing. The court committed no erreor in refusing these instructions; there was not a *scintilla* of evidence upon which to base an instruction upon self-defense; and upon the principle of liability heretofore stated in the language of counsel, it was not necessary to render the defendant liable, that

it should have authorized its watchman to kill the deceased or sanctioned the deed after it was done, and, however wanton or malicious it was, the principal is liable if it was done in the course of the servant's employment.

III.   The defendant asked no instructions on the subject of damages, nor is it suggested in the brief of counsel, except by way of inference, that the damages assessed by the jury are excessive; nevertheless, the instructions given by the court upon that subject are complained of as containing errors for which the judgment should be reversed.   The points made against this instruction are, that this is not a case for exemplary damages, and that the instruction as to compensatory damages does not confine the jury to "pecuniary" damages, and is too vague and indefinite. This action for damages for the death of plaintiff's husband under sections 4426 and 4427, Revised Statutes, 1889, is given against "the person who, or the corporation which, would have been liable if death had not ensued," and in such action "the jury may give such damages, not exceeding five thousand dollars, as they may deem fair and just, with reference to the necessary injury resulting from such death, to the surviving parties who may be entitled to sue, and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default."   It needs no argument to show that under this law, in a proper case, exemplary damages may be given.   It has been so held, or assumed as a self-evident proposition in every case in which the attention of this court has been called to the subject, ever since the law was first enacted in 1855.   *Vawter v. Hultz*, 112 Mo. 633; *McGowan v. Ore & Steel Co.*, 109 Mo. 518; *Gray v. McDonald*, 104 Mo. 303; *Parsons v. Railroad*, 94 Mo. 286; *Stoher v. Railroad*, 91 Mo. 511;

*Smith v. Railroad*, 92 Mo. 359; *Nichols v. Winfrey*, 79 Mo. 544; *Morgan v. Durfee*, 69 Mo. 470; *Owen v. Brockschmidt*, 54 Mo. 285.

By the same authorities, a proper case is made out for such damages, when it is shown that the wrongful act which caused the death was willful, wanton, reckless, oppressive or malicious, and the right to recover such damages is not given alone against the person who perpetrates the act, but against "the person who" or "the corporation" which is *"liable"* for the consequences of such act. The corporation physically could not commit the act, and as we have seen, is not liable because it commanded the act to be done by its servant, or approved it after it was done, but because it was done by the servant in the course of his employment.

It would seem clear, therefore, that the contention of defendant's counsel that exemplary damages can only be recovered when a wrongful act of this character is authorized by the corporation to be committed by its servant, or has been ratified by it after it has been committed, cannot be maintained. The liability for exemplary damages is just as broad, by the terms of the statute itself, as is the liability for compensatory damages. The case of *Rouse v. Railroad*, 41 Mo. App. 298, which is cited by counsel for appellant, as supporting their contention, as well as the cases of *Perkins v. Railroad*, 55 Mo. 201; *Malecek v. Railroad*, 57 Mo. 16, and *Graham v. Railroad*, 66 Mo. 536, which are supposed to support the conclusion reached by a majority of the Kansas City court of appeals in the *Rouse case*, were none of them cases under the sections of the statute now being considered, and for that reason we might be excused from reviewing them.

An additional reason, however, for not reviewing the foregoing cases from this court may be found in

the ample consideration given them by Judge GILL in his dissenting opinion in the *Rouse case* in which he also cites those cases in connection with *Hicks v. Railroad*, 68 Mo. 329; *Travers v. Railroad*, 63 Mo. 421, and *Doss v. Railroad*, 59 Mo. 27, and demonstrates that the holding of the majority of the court in the *Rouse case* has nothing more to rest upon than *dictæ* in some of the opinions, applicable enough, perhaps, to the case then in hand, but that no such exception to the rule of *respondeat superior* (as is here contended for) has been, or was intended to be, established by the rulings of this court in any case for the very good reason given in the first of those cases (*Perkins v. Railroad, supra*), upon which the others are bottomed, that "the only way in which corporations can act in the commission of wrong or otherwise, is by and through their agents. The acts of their agents within the scope of their authority are their acts, and it would seem that there could be no good reason why they should not be responsible for the acts of their agents in the discharge of their duties, when performed in a wanton and malicious manner, just as if the act had been done by the corporation itself." This reasoning precludes the idea of an intention to adopt a rule of exemption of corporations from liability for the wanton or malicious acts of their servants committed in the performance of their duties, within the scope of their employment, and the actual rulings in all the cases in this court are in harmony upon that subject.

There can be no doubt that this was a proper case for exemplary damages; there were no mitigating circumstances in it; there was no necessity to point out the aggravating circumstances, the transaction spoke for itself, and spoke only of willfulness, wantonness and malice of the servant in doing the work of his master, and death as the bitter fruit thereof. It belongs to that

class of cases of which it was said in *Parsons v. Railroad, supra:* "The amount of the damages must necessarily be left, within the limit of the statute, to the fairness and sense of justice of the jury, discharging their duty uninfluenced by prejudice or passion, and as to such damages, no standard for their admeasurement can be given by the court."

We see no fault in the use of the word "actual" in the instruction in this case, or any other that calls for a reversal. In fact the defendant has no reason to complain of the amount of the damages, for when the age of the deceased is taken into consideration, his expectancy of life, and his ability to earn wages, the statutory limit would not be beyond the amount that might well be awarded his widow as compensatory damages only.

IV. The fact that the court admitted evidence that the plaintiff had one child and that she was dependent on her husband for support is no cause for reversal. *Beck v. Dowell*, 111 Mo. 506; *Soeder v. Railroad*, 100 Mo. 673; *Tetherow v. Railroad*, 98 Mo. 74.

This case was well tried and the judgment ought to be affirmed, and it is accordingly so ordered. All concur, except BARCLAY, J., absent.