LEABURN SIMMONS, an Infant, by JOHN SIMMONS, His Next Friend, v. KROGER GROCERY & BAKING COMPANY, a Corporation, and GEORGE BLODGETT, by LOUIS P. WAGNER, JR., His Guardian *Ad Litem,* Appellants.—104 S. W. (2d) 357.

Division One, April 21, 1937.

*Jones, Hocker, Gladney & Jones, Web A. Welker* and *Vincent L. Boisaubin* for Kroger Grocery & Baking Company; *Leahy, Walther, Hecker & Ely* of counsel.

1120

*Eagleton, Waechter, Yost, Elam & Clark* and *Berryman Henwood* for respondent.

COLLET, J.—Action to recover damages for personal injuries. There was a verdict and judgment for $9,333 actual and $9,888 punitive damages against the Kroger Grocery & Baking Company and George Blodgett. This appeal is from that judgment.

Appellants summarize the facts supporting the verdict as follows:

"So considered (in the light most favorable to plaintiff) it appears that the plaintiff and his cousin Senneth were, on the evening of October 31, 1931, Hallowe'en evening, although only about nine years old, taking part in the spirit of the occasion when ghosts and goblins are supposed to walk and boyish pranks run riot, and were roaming the streets in the neighborhood of their homes and of the Kroger store at Thirteenth and Hickory streets. At about five or ten minutes after nine o'clock of that evening, they were peeking into the store window to see the time by the store clock. To effect their vision they had rubbed off a bit of soap that had been smeared by others on the window. The manager, inside of the store, pointed to the window, and apparently, from the motion of his lips, said something to George Blodgett, the clerk, who was sweeping out the store. What, if anything, was said, does not appear. George Blodgett, the clerk, then came out of the store and told the lads to 'Get away from here and cut that out.' At that the boys looked around and he said, 'I mean it.' Thereupon the boys ran and George after them. The boys ran east on the south side of Hickory Street to a point about midway to the next block at Frey Avenue, crossed the street where the alley from the north comes into Hickory Street and continued on down the north side of Hickory Street, Senneth Mobley in the lead and Leaburn Simmons, the plaintiff, behind him, followed by Blodgett. When the boys reached the corner of the next street at Frey Avenue, Blodgett overtook Leaburn, Senneth being ahead and having slipped into a doorway on the west side of Frey Avenue about five or six steps north of Hickory Street. Blodgett caught Leaburn right about at the northwest corner, or intersection, of Hickory and Frey. Blodgett grabbed Leaburn by the

collar and tripped him, throwing him to the pavement, saying: 'I will teach you to rub soap on the windows.' According to the plaintiff, Leaburn, that is all that was done in the way of an assault. According to the lad Senneth, Blodgett also stamped on Leaburn's arm three or four times while he was down. Neither boy saw where Blodgett went after the assault.''

Respondent not only accepts that statement of the facts as substantially correct but also agrees with appellants that the rule announced in **Haehl v. Wabash Ry. Co., 119 Mo. 325, 24 S. W. 737,** controls the question of the defendant Kroger Company's liability. The parties differ, however, in the proper application of the rule there announced to the facts in the present case.

The rule announced in Haehl v. Wabash is stated as follows:

''The principle of *respondeat superior* applies only when what is complained of was done in the course of the employment. The principal is responsible, not because the servant has acted in his name or under color of his employment, but because the servant was actually engaged in and about his business and carrying out his purposes. He is then responsible, because the thing complained of, although done through the agency of another, was done by himself; and it matters not in such cases whether the injury with which it is sought to charge him is the result of negligence, unskillful or of wrongful conduct, for he must choose fit agents for the transaction of his business. But if his business is done, or is taking care of itself, and his servant not being engaged in it, not concerned about it, but impelled by motives that are wholly personal to himself, and simply to gratify his own feeling of resentment, whether provoked or unprovoked, commits an assault upon another, when that has, and can have, no tendency to promote any purpose in which the principal is interested, and to promote which the servant was employed then the wrong is the purely personal wrong of the servant for which he, and he alone, is responsible.''

In State ex rel. Gosselin v. Trimble, 328 Mo. 760, 418 S. W. (2d) 801, on certiorari to the Kansas City Court of Appeals we approved the following statement of that court:

''If there is any evidence which would justify a jury in finding that the assault made on the plaintiff was incident to an attempt upon the part of defendant's driver to do his master's business, then we must hold that the case was for the jury.''

In Smothers v. Furnishing Co., 310 Mo. 144, 274 S. W. 678, we reiterated the following expression of this court made in Whiteaker v. Chicago, etc., Railroad Co., 252 Mo. 1. c. 458, 160 S. W. 1009:

''The general rule is that the maxim *'respondeat'* applies when the servant, in the line of his employment about his master's business, seeks to accomplish his master's purposes and in doing so acts

negligently or willfully and maliciously, or even contrary to his orders or criminally, in some instances.'' The majority opinion in Maniaci v. Express Co., 226 Mo. 633, 182 S. W. 981, is to the same effect.

Measured by the rule illustrated by the above-quoted expressions of this court the request of defendant Kroger Grocery & Baking Company for an instructed verdict was properly denied. In the light of the other facts it is of little consequence what the manager of the store said to Blodgett when he (the manager) pointed to the window. If the manager had actually ordered Blodgett to drive the boys away from the window in order to stop the trespass which he thought the boys were committing, such a command would have amounted to nothing more than a mere direction to drive the boys away and would not have constituted a direction to chase the boys a block and then make an assault on plaintiff. The facts related by plaintiff however are sufficient to warrant and sustain the jury's conclusion that the manager directed Blodgett to drive the boys away. That being true, it only remains to be seen whether the assault by Blodgett was incident to an attempt upon his part to protect his master's property. If that question be answered in the affirmative the master is liable although, as stated in Whiteaker v. Railroad, supra, Blodgett carried out the direction in a negligent manner, or willfully, maliciously or even contrary to orders. There was no interruption in the purpose of Blodgett's actions from the time he started to the front door until the assault was committed. No purpose to accomplish any purely personal business or desire appears to have intervened. He started out to drive the boys away. That purpose continued as the only apparent actuating cause of his actions throughout the episode. Appellant would have us say, in effect, that the instant Blodgett had done that which he properly should have done to drive the boys away, then the master's responsibility ceased, although the servant out of a mistaken or improper conception of his duty, or of the proper manner of carrying out the master's direction, may have thereafter been actually endeavoring to discharge his duty to his master. That is not the law. [Haehl v. Wabash, supra; Whiteaker v. Railroad, supra; Cooley on Torts (3 Ed.), sec. 626, p. 1017; 2 Mechem on Agency (2 Ed.), secs. 1929 and 1960; Pierce on Railroads, pp. 277, 278; 18 R. C. L., sec. 252, p. 792.] Counsel cite several cases, which, it is asserted, support appellant Kroger Grocery & Baking Company's contention that Blodgett was not acting within the scope of his employment at the time of the assault. Typical of all such cases are Rohrmoser v. Household Finance Corp., 86 S. W. (2d) 103, Smothers v. Furnishing Co., supra, and State ex rel. Gosselin v. Trimble, supra. In those cases the pursuit of a purely personal purpose of the servant, not in any manner incident to or connected with the business of the employer resulted in the assault or injury.

■ Mrs. Rosabelle Goforth testified, over the objection of appellant, that she had a conversation with the manager of the store two days after the assault in which conversation the manager stated that he told Blodgett to chase the boys (plaintiff and his companion) away from the store. At the close of plaintiff's case the court addressed the jury as follows:

"The COURT: Gentlemen of the jury: The Court has heretofore admitted certain testimony of the witness, Mrs. Goforth, substantially as follows:"

The testimony above referred to was then read to the jury by the court and the following admonition given:

"The Court instructs you that the said evidence should not have been admitted by the Court and the objection to said testimony should have been sustained by the Court.

"The Court now instructs you, gentlemen of the jury, that the said testimony should be and is stricken from the record, and that you are to wholly disregard said testimony and are not to consider the same in any way in the trial of this case and in arriving at your verdict thereon."

Objection was made and exception taken to this action of the court upon the ground that it did not cure the error. That contention is now urged as a ground for reversal. It is conceded by respondent that the testimony was improperly admitted. However the specific direction to disregard the testimony cured the error. [Grott v. Johnson, Stephens & Shinkle Shoe Co. (Mo.), 2 S. W. (2d) 785; Harrison v. K. C. Electric Light Co., 195 Mo. 606, 93 S. W. 951; McCarter v. Burger (Mo. App.), 6 S. W. (2d) 979.] Moreover, since there was other competent evidence from which the jury could have concluded that the manager gave Blodgett instructions to chase the boys away there could have been little, if any, "sting" in the admission of this incompetent testimony, cumulative as it was. For the latter reason the case of State v. Matsinger (Mo.), 180 S. W. 856, cited by appellant, has no application.

■ Appellants' final contention is that punitive damages should not be allowed against a corporate master for an assault by its servant, under the doctrine of *respondeat superior*, in the absence of a showing that the master was a common carrier or public service corporation owing a special duty to the public; or in the absence of a showing that the master concurred in the assault or actually participated therein, or was negligent in employing a servant of known vicious and ill-tempered propensities.

No authority is cited in support of the argument that a distinction should be recognized between the liability of a common carrier or public service corporation for punitive damages and a corporate master such as the corporate defendant in this case. The facts before us suggest no reason for such a distinction. The theory that a

corporate master should not be held answerable in punitive damages unless it concurred or participated in the assault is substantially the same as the principle announced in Rouse v. Metropolitan Street Ry. Co., 41 Mo. App. 299, and later disapproved in Haehl v. Wabash Ry., supra.

The judgment should be affirmed. It is so ordered. All concur.