Harden M. JOHNSON, and Martha Johnson,
Appellants,

v.

Forrest ALLEN, d/b/a Allen's Motor &
Transmission, Respondent.

No. 25068.

Kansas City Court of Appeals.

Missouri.

Dec. 1, 1969.

———◆———

Philip C. Ehli, Kansas City, Max Von Erdmannsdorff, North Kansas City, for appellants.

Sheffrey, Ryder & Skeer, by Leonard Rose, Kansas City, for respondent.

HOWARD, Presiding Judge.

This is a suit for actual and punitive damages for fraud in the installation of an improper transmission in plaintiffs' automobile. Trial to a jury resulted in a verdict and judgment for the plaintiffs for actual damages in the amount of $700.00 and for punitive damages in the amount of $10,000.00. On motion, the trial court set aside the judgment for plaintiffs and entered judgment for defendant and in the alternative sustained defendant's motion for new trial on the grounds, among others, that the "Verdict was so excessive that it indicates bias and prejudice of the jury against defendant." Plaintiffs have duly appealed from this action. We shall refer to the parties as they appeared below.

On September 8, 1964, Mrs. Johnson took the 1955 Buick Special automobile, owned by herself and her husband, to defendant's place of business in North Kansas City, Missouri, because it had a leak in the transmission. She talked to defendant's employee, Mr. Tongue, who was in charge. It developed that defendant owned several places of business wherein he engaged in repairing and installing transmissions. Mrs. Johnson was advised that it would probably cost $35.00 to $40.00 to repair the leak but she and her husband were later advised that the installation of a new or rebuilt transmission was necessary and this would cost more money. A rebuilt transmission was installed and the bill was $292.23. Payment in this amount in cash or its equivalent was required and defendant's employee refused to take a personal check. Mrs. Johnson secured a bank money order payable to Allen's Motor and Transmission Company, paid the bill and drove away in the car. In the matter of a few blocks she realized that something was wrong with the car. It had a noise in the rear end that it had not had before and it operated differently than it had before—it seemed to "hang up" and did not want to go around the corner. She immediately drove back to defendant's transmission shop and called her husband. When Mr. Johnson arrived, he felt under the car and came up with transmission fluid on his hand. After considerable conversation, some of it heated, a new seal was placed in the transmission and Mr. Johnson and one of the mechanics drove the car. When they returned, there was further heated discussion and defendant's employees, including Mr. Tongue, assured the plaintiffs that everything was all right with the car; that the noise was caused by a faulty muffler system and that the new seal would stop the leak. During these events, Mrs. Johnson had picked up the bank money order from the desk in the office but upon these assurances, she returned the money order to defendant's employee and she and her husband left in the car. The transmission continued to leak and the car did not operate properly. Plaintiffs unsuccessfully tried to contact defendant over a long period of time to complain about the car but were unsuccessful in talking to defendant. However, each of them were successful in getting "cussed out" by defendant's employees. Plaintiffs finally succeeded in talking to defendant but the matter was not settled and this suit followed.

At the trial defendant admitted that the wrong transmission had been installed in plaintiffs' car. It appears that 1955 Buicks used two sizes of transmissions. The

Buick Special owned by the plaintiffs took the smaller size transmission but the larger size transmission had been installed in plaintiffs' car and it was an inch to an inch and a half longer than the proper transmission. This resulted in the rear end of the automobile being pushed back farther than it should be which could cause the car to operate improperly.

In view of the fact that the trial court set aside the verdict and judgment for plaintiffs and entered judgment for defendant, we view the facts in the light most favorable to plaintiffs and our foregoing statement of facts is made in this light. For the purposes of this opinion, it is unnecessary to recite the great volume of minutely detailed evidence contained in the transcript.

On this appeal, plaintiffs contend that they made a submissible case in fraud and that the trial court erred in setting aside their judgment.

The elements of actionable fraud have been many times set forth in the opinions of our appellate courts. These elements are: (1) A representation; (2) Its falsity; (3) Its materiality; (4) The speaker's knowledge of its falsity or ignorance of its truth; (5) His intent that it should be acted on by the person and in the manner reasonably contemplated; (6) The hearer's ignorance of its falsity; (7) His reliance on its truth; (8) His right to rely thereon; and (9) His consequent and proximate injury. See Powers v. Shore, Mo., 248 S.W.2d 1; Williams v. Miller Pontiac Company, Mo.App., 409 S.W.2d 275; and 37 C.J.S. Fraud § 3, page 215.

It is well settled that the representation required to establish a cause of action for fraud need not be made in so many words. It can be inferred from all of the circumstances surrounding the transaction. See Williams v. Miller Pontiac Company, Mo.App., 409 S.W.2d 275; Bolten v. Colburn, Mo.App., 389 S.W.2d 384;

and Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083.

From the foregoing statement of facts and considering all of the circumstances and inferences to be drawn therefrom, we believe the jury could have found that the defendant, through his employees, represented that a proper, rebuilt transmission had been installed in plaintiffs' car; that the new seal put in the transmission would seal itself and cure the leak and that the plaintiffs' complaints resulted from a faulty muffler system and worn out shock absorbers and not from the transmission installed by defendant. On the trial it was admitted that the representation as to the installation of a proper transmission was false and the jury could well have found from the evidence that the things about which plaintiffs complained were the result of the installation of the improper transmission and that the new seal installed by defendant was not capable of sealing itself in the future. (That this constitutes a representation of present fact and not an expression of opinion or promise of future action, see Doll v. Purple Shoppe, 230 Mo. App. 256, 90 S.W.2d 181, and National Theatre Supply Co. v. Rigney, Mo.App., 130 S.W.2d 258, 263, and authorities cited therein.) These representations were material because the installation of a proper transmission and one which would permit the automobile to operate properly was the very thing for which the plaintiffs paid their money. The jury could reasonably find that these representations were made by defendant's employees knowing them to be false or knowing that they had no knowledge whether they were true or false. Likewise, the jury could reasonably find that these representations were made to plaintiffs for the very purpose of having them rely thereon and take their car and leave their money in spite of their doubts and questions caused by the difference in the operation of the car before and after the work was done. The evidence is amply sufficient to support the jury's finding that the plaintiffs were ignorant of the falsity

of these representations and relied on them because of their lack of knowledge of mechanical facts. Because of this lack of mechanical knowledge on the part of plaintiffs and the fact that defendant held himself and his employees out to be knowledgeable in the field of automatic transmissions, plaintiffs had a right to rely on such representations and their damage flowed therefrom to their consequent and proximate injury.

We therefore conclude that plaintiffs' evidence established each and every one of the elements necessary to prove a cause of action in fraud; that the jury was justified in so finding and that the trial court erred in setting aside the judgment for plaintiffs and entering the judgment for defendant.

The parties have not cited and our own research has not revealed any case where an action in fraud was brought or maintained on a factual situation comparable to the one presented in the case at bar. However, consideration of the basic principles of the law of fraud, as outlined above, convinces us that plaintiffs' evidence was such as to require that the issue be presented to and decided by the jury and not the court.

The foregoing conclusion requires a reversal of the judgment finally entered by the trial court and we must now determine whether or not the alternative ruling granting a new trial was proper. In this connection, defendant strenuously contends that the action of the trial court in submitting the issue of punitive damage was erroneous. This contention is based primarily and almost exclusively on the ruling of the Supreme Court of Missouri in State ex rel. United Factories, Inc. v. Hostetter, 344 Mo. 386, 126 S.W.2d 1173, which was an original proceeding in certiorari to quash the opinion of the St. Louis Court of Appeals in the case of United Factories, Inc. v. Brigham, 117 S.W.2d 662.

In the case at bar, defendant contends that there is a distinction between the obligation of an individual employer and a corporate employer to respond in exemplary damages for the acts of the employee. He contends that an individual employer (in contrast to a corporate employer) is liable in exemplary damages for the acts of his employee only if the employer participated in or directed the acts of the employee or acquiesced in or ratified such acts after he had knowledge thereof. He contends that the Hostetter case, supra, makes this distinction and requires this result. From the St. Louis Court of Appeals opinion in the case of United Factories, Inc. v. Brigham, supra, it appears that the defendant did business as an individual under the name of "Brigham Oil Burner Company" and that without defendant's knowledge, an employee issued a bulletin concerning the product of a competitor which resulted in the competitor suing defendant for libel. The evidence was uncontradicted that defendant did not know about the publication of the bulletin when it was sent out. When defendant found out about it, he immediately stopped the employees from sending out any more. On the basis of such evidence, the St. Louis Court of Appeals stated: "The testimony of these two of plaintiff's witnesses clearly negatives the existence of any malice on the part of James W. Brigham, consequently, error was committed in submitting the question of punitive damages." The opinion contains no citation of authority for this conclusion and no principle of law justifying or requiring such conclusion is discussed. On certiorari United Factories, Inc., contended that the ruling of the Court of Appeals was in conflict with numerous prior controlling decisions of the Supreme Court. The Supreme Court pointed out that all of these cited decisions either dealt with corporate employers or were not in point or in conflict for various other reasons. The court concluded that the "precise question has not been ruled by this court." The Supreme Court was careful not to express any opinion as to whether or not the above quoted conclusion of the St. Louis Court of Appeals was cor-

rect. No mention is made in the Hostetter opinion of the previous case of Hinson v. Morris, Mo.App., 298 S.W. 254, decided by this court in 1927, long prior to the decision in the Hostetter case. This apparently for the reason that the relator in certiorari to the Supreme Court asserted only conflict with prior opinions in the Supreme Court.

In Hinson v. Morris, supra, there was a verdict and judgment for $500.00 compensatory damages and $1,000.00 punitive damages. On appeal the defendant contended that punitive damages could not be awarded against an individual employer for the tort of his employee unless it was found that the employer authorized the assault or ratified it after its commission, even though the Missouri cases held that a corporate employer was liable for punitive damages for the torts of its employees, without a finding of authorization or ratification. The court concluded that such a distinction between individual and corporate employers was not established and concluded that the trial court did not err in submitting the issue of punitive damages against the employer to the jury without requiring a finding of authorization or ratification.

No other case has been brought to our attention wherein the distinction contended for by defendant has been considered and our own research has failed to disclose any. However, in Maniaci v. Interurban Express Co., 266 Mo. 633, 182 S.W. 981, the Supreme Court said, l.c. 983:

"It is not imposing too great a hardship upon either corporations or individuals, to require them to respond in damages to legitimate patrons, for unprovoked, wanton, and malicious assaults, inflicted upon them, while in the very act of settling their controversies with the agent of the carrier. The conclusion thus reached is fully sustained by the great weight of modern jurisprudence. * * *"

In 22 Am.Jur.2d, Damages, Section 258, page 352, it is said:

"* * * The rule imposing liability without regard to authorization or ratification by the employer applies to a natural person as well as a corporation and even though due care has been exercised in selecting a competent and careful employee. Under this rule, if an agent, in doing an act which he is deputed to do, does it in such a manner as will render him liable for exemplary damages, his principal is likewise liable. * * *"

In 25 C.J.S. Damages Sec. 125(4), considering the obligation of an employer to respond in punitive damages for the acts of his servant, the text makes no distinction between individual and corporate employers, however, the footnotes indicate that such a distinction has been recognized in a very few states, but Missouri is not among them. It appears that under the decided cases in Missouri, the determining factor is not the status of the employer as individual or corporate but, rather, is whether or not the employee acted within the course and scope of his employment and in furtherance of his employer's business. This principle was firmly established in Haehl v. Wabash Ry. Co., 119 Mo. 325, 24 S.W. 737, and has since been consistently adhered to in our decisions. See also Simmons v. Kroger Grocery & Baking Co., 340 Mo. 1118, 104 S.W.2d 357.

No reasonable basis for or authority supporting this distinction has been brought to our attention by defendant. Regardless of whether the defendant was doing business as an individual or through the form of a corporation, the business was conducted by and through the medium of agents and employees, and members of the public who dealt with the business were, from the nature of things, required to deal with the employees rather than with defendant individually. We do not believe that happenstance should govern the right to punitive damages. We therefore conclude that the law does not require

a finding of prior authorization or subsequent ratification before an individual employer will be held liable in punitive damages for the torts committed by his employees within the scope and course of their employment and in furtherance of the employer's business. Certainly the present facts and circumstances do not require such a distinction.

In conjunction with this issue as to punitive damages and on other grounds also, defendant contends that the trial court acted properly in granting a new trial because of error in instructions. Since we conclude that a new trial must be had for other reasons, we do not find it necessary to pass upon these contentions. The parties will be well advised to consider and redraft their instructions on retrial.

■■■ The trial court sustained defendant's motion for new trial, in the alternative, on numerous grounds, one of which was that the verdict was so excessive as to indicate bias and prejudice of the jury against the defendant. It will be remembered that the verdict assessed plaintiff's actual damages at $700.00 and punitive damages at $10,000.00. It has been repeatedly held in Missouri that while the amount of the verdict alone will not authorize an appellate court to find passion and prejudice on the part of the jury, that the trial court, having witnessed the entire trial, can in a proper instance base a conclusion that the verdict is the result of bias, passion and prejudice, on the amount of the verdict alone. See Stubbs v. Kansas City Terminal Railway Company, Mo.App., 427 S.W.2d 257; Pulem v. George, Mo. App., 433 S.W.2d 83, and cases cited therein. There were certain trial incidents which the trial court might also have considered in arriving at this conclusion but since they are not urged by the parties in this connection, we find it unnecessary to discuss them but base our conclusion that the trial court did not err in granting a new trial, upon the established principle that the trial court can find bias, passion

and prejudice on the part of the jury, from the amount of the verdict alone. We conclude that under all of the circumstances, such finding of the trial court was justified.

Therefore, the judgment of the trial court in favor of defendant is reversed and the cause remanded for a new trial in accordance with the alternative ruling of the trial court.

All concur.