BROWN, *Executrix, et al., Appellants*, v. MASSEY.

138  519
147  385

### Division Two, April 3, 1897.

1. **Construction of Contracts**: GUARANTY. B., for the purpose of speculation, purchased real estate; whereupon defendant entered into a written contract with him, guaranteeing that if defendant be allowed to subdivide and handle said property it would, on or before the expiration of eighteen months, yield B. a sum equal to the purchase price paid by B. and ten per cent per annum thereon from the date of purchase by B. to the date of sale thereof, in consideration of which guaranty defendant was to receive half the proceeds, if any, after said purchase price and ten per cent per annum thereon, had been paid to B. *Held*, that this was an absolute agreement by the defendant to pay B. the sum of $4,000 and ten per cent thereon up to the time of a sale within the eighteen months or at the expiration thereof, *and* that at the end of eighteen months B. could have demanded a compliance with the guaranty and upon defendant's default could have sued him for the breach and the measure of his damages would have been the difference between the value of the land at that time and the $4,000 and the percentage, *and* that he had a complete and adequate remedy at law for such a suit.

Brown, Ex'tr'x, v. Massey.

2. ———: EQUITY: SPECIFIC PERFORMANCE: INTEREST IN LAND.  Under the above contract defendant had no interest in the land; he had merely a contingent interest in the proceeds arising from the sale thereof, and, when defendant failed to perform, an action at equity asking for a judgment against defendant, and that the land be sold and the proceeds arising from the sale be applied to said judgment, will not lie.

3. Equity: SPECIFIC PERFORMANCE.  A decree of specific performance of a contract for sale of real estate does not go as a matter of course merely because there is a binding legal contract, and where the evidence showed that under the terms of the contract the sale was to be made within eighteen months, that suit was not instituted until three and a half years after the expiration of that period of time, and that in the meantime the property had greatly depreciated in value, the court will not decree specific performance.

4. Evidence: COPY OF LETTER.  A supposed copy of a letter, offered without any explanation as to its origin or custody, where the one to whom the original is supposed to have been sent disclaims all recollection thereof, is properly excluded from the evidence.

*Appeal from Greene Circuit Court.*—HON. JAS. T. NEVILLE, Judge.

AFFIRMED.

*Goode & Cravens* for appellants.

(1)  The plaintiffs were compelled to do the one thing which the agreements were designed to guard against—sustain a loss by the land declining in value. The contracts should have been enforced according to their terms.  *Watts v. Kellar et al.*, 56 Fed. Rep. 1; *Stewart v. Caldwell*, 54 Mo. 536; Waterman's Spec. Perf., sec. 14, p. 16; 3 Pomeroy Eq., secs. 1402, 1403. (2) Depreciation in the value of the property, after the contract has been concluded, is no defense to a bill for performance.  In ordinary cases the loss must be borne by the purchaser.  *A fortiori* in this one where the very object of the contract was the assumption of such possible loss by defendant and escape by Brown.

Waterman's Spec. Perf., sec. 194, p. 258; *Revell v. Hussey*, 2 Ball & B. 287; *Paine v. Miller*, 6 Ves. 349; *Mortimer v. Capper*, 1 Bro. C. C. 156; *Jackson v. Levar*, 3 Bro. 605. (3) There were no laches. *Beverly v. Blackwood*, 36 Pac. Rep. 378; *In re Ferguson's Estate*, 27 S. W. Rep. (Mo. Sup. Ct.) 513. *First.* The parties did not stipulate that time should be of the essence. "The general rule of equity is, that time is not of the essence of the contract unless it clearly appears from the terms of the contract in the light of all the circumstances that such was the intention of the parties." *Steele v. Branch*, 40 Cal. 11; *Brown v. Guarantee Trust Company*, 128 U. S. 403. *Second.* In land contracts, stipulations concerning time, when included are usually treated as formal, not essential. *Mastin v. Grimes*, 88 Mo. 478; 3 Pomeroy's Eq. Jur., sec. 1408, p. 454. *Third.* For laches to be available as a defense, the party interposing it must show that he has been ready at all times to perform all substantial conditions required of him. 22 Am. and Eng. Ency. of Law, p. 1050; *House v. Beatty*, 7 Ohio, 438; *Mudgett v. Clay*, 5 Wash. St. 347 (31 Pacific, 424); *Riley v. McNamara*, 18 S. W. Rep. 141; *Newton v. Hull*, 90 Cal. 493. (4) The guarantee of defendant that the land should yield Brown the purchase money and ten per cent in eighteen months after the purchase, was a provision for the benefit of Brown alone, and the latter could not be put in default except by a refusal to convey to Massey when the latter tendered the price and interest. *Newton v. Hall*, 90 Cal. *supra; Wilcolson v. Stitt*, 65 Cal. 596.

*Karnes, Holmes & Krauthoff*, with *W. D. Tatlow*, for respondent.

(1) "Courts have no power to make new contracts or to impose new terms upon parties to contracts, with-

out their consent. Their powers are exhausted in fixing the rights of parties to contracts already existing."
*New Orleans v. Waterworks Co.*, 142 U. S. 79. "Contracts are made by parties and not by courts." *Mason v. Payne*, 47 Mo. 517, 519. (2) The contract at bar was one of guaranty, pure and simple. It imposed no obligations on Brown to sell; nor does it contain a stipulation on Massey's part to purchase. The parties contemplated that a sale should be made to third persons. Unless such a sale was made in eighteen months, Brown had a right to call on Massey to make good his guaranty. Whether the contract be considered as a guaranty, or as an agreement by Massey that unless the specified amount were realized on or before eighteen months from the date of the original purchase he would become the purchaser at that price, the result of this appeal must be the same. (3) The contract gave Massey no interest in the land, but only a right to share in the net profits if any were realized. *State v. Walker*, 88 Mo. 279; *Green v. Cole*, 103 Mo. 70; *Glover v. Henderson*, 120 Mo. 367; *Hunt v. Rousmanier*, 4 Wheat. 174, 203, 204. Hence, it must follow that the plaintiffs' cause of action was one purely at law to recover any damages Brown had sustained by any failure on Massey's part to make good his guaranty. Specific performance proceeds on the theory that a court will require a party to do what he has contracted. No one can spell out any agreement on Massey's part to purchase the land. He agreed to guarantee certain returns to Brown by a given date. The court could do no more than to enforce this agreement. The decree could go no further than the contract, namely, require Massey to make good that the land, would have yielded the investment, with ten per cent interest, on or before May 27, 1890. (4) Where the option is to buy given property, no interest in the property is thereby created;

and where the option is to sell, no claim is created in favor of the party holding the option. In either event, the transaction is a mere offer, and conditional in its nature. A most satisfactory digest of the authorities is found in a carefully prepared note to *Litz v. Goosling*, 21 L. R. A. 127–133; 1 Whart. Cont., sec. 15; 2 Whart. Cont., sec. 887; 1 Chitty, Cont. [11 Am. Ed.], p. 15, note e; Leake on Contracts, pp. 40, 679. (5) "There is no doubt that in the case of a sale of property, where a right to repurchase is reserved, a nonperformance of the terms imposed will deprive the person entitled to it of any benefit from such exercise." *Ward v. Wolverhampton, etc., Co.*, L. R. 13 Eq. Cas. 243, 249; *Moss v. Sweet*, 16 Q. B. [16 Ad. & El. N. S.], 493; *Honeyman v. Marryatt*, 21 Beav. 14, 24; *Nicholson v. Smith*, 22 Ch. Div. 640, 655, 657. This court has been no less clear in stating the rule. *Mason v. Payne*, 47 Mo. 517, 519, 520; *Mers v. Franklin Ins. Co.*, 68 Mo. 127, 130. (6) Even if the contract had contained an absolute promise on Massey's part to purchase on May 27, 1890, and Brown had then elected to require him to buy, so as to impose a binding obligation, this action, instituted in December, 1893, would fail under the general rule applicable to actions for specific performance. The situation of the parties had changed in material respects during the period of delay. The venture was a purely speculative one, and the circumstances such that the property was subject to rapid fluctuations of value. In such cases, courts require that parties seeking specific performance shall have proceeded diligently; declare a delay, which would ordinarily be excused, to be fatal; and deem specific performance to be unjust and inequitable. 2 Warvelle Vendors, p. 758. These rules are applied because by the change of circumstances, time has become of the essence of the transaction. *Estes v. Reynolds*, 75 Mo. 563; *Kline v. Vogel*, 90 Mo. 239;

*Burgess v. Railroad*, 99 Mo. 496; *Kroenung v. Goehri*, 112 Mo. 641; *Wendover v..Baker*, 121 Mo. 273; *Twin Lick Oil Co. v. Marbury*, 91 U. S. 587; *Hayward v. National Bank*, 96 U. S. 611; *Hammond v. Hopkins*, 143 U. S. 224; *Galliher v. Cadwell*, 145 U. S. 368; *Lemoine v. Dunklin County*, 51 Fed. Rep. 487, and cases cited; *Sagadahoc Land Co. v. Ewing*, 65 Fed. Rep. 702. (7) The court correctly excluded the paper produced by plaintiffs' counsel purporting to be a copy of a letter written by Brown to Massey. It was not shown that this copy was in Brown's handwriting; nor that it was taken from his letter-press book; nor that it was made by a clerk or secretary whose business it was to make it; nor that it was found among Brown's papers. 1 Whart. Ev., sec. 133.

GANTT, P. J.—This is a suit in equity based upon the following written agreement:

"This agreement made and entered into this 29th day of November, 1888, by and between Sandie Brown, party of the first part, and Benj. U. Massey, party of the second part, witnesseth; that said Brown at the instance and suggestion of the said Massey, has purchased of the McQuigg heirs the following described real estate in Greene county, Missouri, viz.: the northwest quarter of the northwest quarter, section 15, township 29, range 22, for the price and sum of four thousand dollars, for the purpose of speculation. And this agreement is, that in consideration that said Massey hereby guarantees that said land will yield to said Brown not less than the sum of four thousand dollars, on or before the expiration of eighteen months from the date of said purchase, with a sum in addition thereto equal to ten per cent per annum thereon, he, the said Brown, agrees that said Massey shall manage, subdivide and sell said property for such price or

prices, as may be agreed upon by the parties hereto, and upon such terms as they may determine. He, the said Massey, to receive for his services in so buying said land, and in so managing and selling said property, one half of the profits arising from the proceeds of the sale of said land, that is, one half of the money realized from the sale of said land, over and above the said four thousand dollars and the ten per cent per annum interest on same to be returned to said Brown, and over and above all other items of expense incurred in preparing said land for sale—opening streets through same, advertising same for sale, paying taxes thereon, etc. And in addition to the four thousand dollars, and the interest thereon so to be returned to the said Brown, he, the said Brown, is to receive the other one half of the net profits arising from the sale of said land. This agreement executed in duplicate. Witness our hands and seals this day and date first above written.

"As part of the above contract, said Massey has purchased of John Y. Fulbright, a strip of land 97 feet wide and 80 rods long, adjoining the 40 acres above mentioned, on the south, and deed to same has been made to said Sandie Brown, for which said Brown has paid the sum of five hundred dollars. And further, the said Brown has paid the Springfield & Nichols Street Railway Company, seven hundred and fifty dollars, to induce said railway company to build a street railway to said tract of land, which said railway is now built and in operation. Now this further agreement by and between said Massey and Brown is, that said Massey, for the consideration of receiving one half of the profits of same, as mentioned in the original contract, does hereby guaranty that said Brown shall be paid this said sum of $1,250, in addition to the original $4,000, before any profits arising from said

lands shall be paid to said Massey. The intent and meaning of this additional agreement is that Brown shall have 10 per cent on the $1,250 just as he is to have ten per cent on the original $4,000. And that this interest and principal shall be paid to him just as the interest and principal of the $4,000 is to be paid to him. Springfield, Mo., September 24, 1889.''

The foregoing stipulations are both written on the same sheet of paper.

Alexander Brown died in April, 1893, having given his estate by his last will to his wife and children and appointed his wife executrix. This suit is prosecuted by his wife and children.

The petition alleges the death of Mr. Brown; the execution and probate of his will and the provisions thereof and the making of the foregoing contract, setting it out at length. The pleaders then make the following allegations:

''Plaintiffs further state that the said Sandie Brown, deceased, in all things performed and kept the said agreement on his part, and that the said land did not yield to said Brown the sums of money which, by the above agreement, the defendant guaranteed and covenanted it should yield to him, the said testator, nor any part thereof; that on the contrary, neither the said testator nor this executrix, nor any one in his or her behalf, has received any money whatever from the said tracts of land; that is to say, neither the said testator nor this executrix, nor anyone for him or her, has received from the tract of land first aforesaid any part of the purchase price thereof, to wit, the sum of four thousand dollars, nor interest on the said sum, nor did the testator, in his lifetime, nor has this executrix since his death, nor anyone for him or her, receive from the tract of land last aforesaid the purchase price thereof, to wit, the sum of five hundred dollars, or any part of

it, nor any part of the said seven hundred and fifty dollars paid to the Springfield and Nichols Street Railway Company as aforesaid, nor any interest on either of said sums.

"Plaintiffs further state that in accordance with said contract, the management and control of said tracts of land were placed in the hands of the defendant in order that he might dispose of the same as contemplated by said agreement for the advantage of himself and the deceased.

"Plaintiffs further state that the plaintiff, Susan C. Brown, as executrix of the said last will of the deceased, has demanded of the defendant that he comply with the said agreement and pay to her the sum of money which he thereby guaranteed, and has tendered to him a good and sufficient deed as executrix of the said will, and under the power of sale therein given to her as such, conveying to him, the defendant, all the right, title, interest and estate of the said Sandie Brown in and to the aforesaid tracts, and also a deed of all the devisees in said will and of said Susan C. Brown as trustee of George and Charles Brown. That the said Sandie Brown died seized in fee simple and in possession of the said tracts, and the plaintiff, Susan C. Brown, as his executrix, is now in the possession thereof. That the defendant refused to accept said deed and to pay to plaintiff the sums of money which he therein covenanted and guaranteed on the contingencies therein mentioned, to pay to the said deceased.

"Wherefore plaintiffs pray that a decree be entered that the said land be sold at public vendue by the sheriff of this county, that a decree be entered against the defendant for the sums of money aforesaid with interest at the rate of ten per cent per annum as stipulated in the agreement, that the proceeds arising for the sales of said land, less the expenses incident

thereto, be applied in satisfaction of said judgment as far as may be, and for other and proper relief.''

There was a demurrer to the petition, averring that it failed to state facts sufficient to constitute a cause of action, and the plaintiffs had a complete and adequate remedy at law.

This demurrer having been overruled, the defendant answered that "neither Brown, nor anyone for him, had, within the time mentioned in the contract sued on, elected to have the defendant purchase the land in question;" also, "that since the expiration of the eighteen months mentioned therein the said land has depreciated in value at least fifty per cent, so that it would be inequitable and unjust to require the defendant to take the same at its present value.''

The trial court declined to hold that the contract sued on was merely one of guaranty, for the breach of which the remedy was at law, but construed it to be a contract by which Massey offered to purchase the land from Brown at any time within eighteen months, at the election and option of said Brown, made and exercised within that time; that plaintiffs only had the right to have all the right, title and interest of defendant Massey in and to said lands forever foreclosed and divested and vested in plaintiffs; and the rights of Massey in said contract should be rescinded, forfeited, and held for naught. A motion for new trial was entered and overruled and plaintiffs appeal.

It must be apparent that no intelligent and satisfactory response can be made to the claims of the parties to this suit until the contract between Alexander Brown and Benjamin Massey is properly construed. The construction must be of this contract as made. We have no power to supplement its stipulations with others which could have properly been made, or in all probability would have been added, had either party

stopped and considered the contingency of a failure of the speculation to realize the anticipated profit. On the other hand the court will determine what the real transaction was despite the form of words used. But one construction is placed upon the contract by the plaintiffs and that is that the agreement amounted to an absolute contract by defendant that the land should bring Alexander Brown $4,000, and ten per cent per annum upon that sum in eighteen months, and in default defendant would become the purchaser at that price, whereas defendant insists that in truth and in fact the contract is one of simple guaranty. Now, the controlling words in the agreement are these: "That in consideration that said Massey hereby guarantees that said land will yield to said Brown not less than the sum of $4,000 on or before eighteen months from the date of said purchase, with a sum, in addition thereto equal to ten per cent per annum thereon, Brown agrees that Massey shall manage, subdivide and sell said property for such price or prices as they may agree upon, Massey to receive one half of the profits of said sales over and above the $4,000 and ten per cent per annum interest thereon, which sum is to be first returned to Brown." Certainly both parties contemplated sales to third persons and first a reimbursement to Brown of his money and interest, and secondly, a division of the profits, by way of compensating Massey for his services. As a consideration for the supposed profits to accrue to him from such control and sale of the land Massey guarantees a return of the money invested and interest at ten per cent prior to or at the end of eighteen months. We think the language used is susceptible of but one construction and that is that Massey bound himself unconditionally to realize and pay to Brown at the end of eighteen months at the

farthest $4,000 and ten per cent per annum thereon up to the time he should pay said sum within the eighteen months or at the expiration thereof. The fact that they both expected that he would obtain the price guaranteed out of the sale of the land did not qualify his absolute agreement to pay that specific sum. Assuming then that this is the meaning of the agreement, what remedies accrued to Brown under it? Unquestionably he might, at the end of the eighteen months, have demanded compliance with the guaranty and upon Massey's default have sued him for damages for the breach, and the measure of his damages would have been the difference between the value of the land at that time and the $4,000 and interest. We can discover no possible objection to this remedy at law and it would seem to be complete and adequate.

Instead, however, of proceeding by an action at law plaintiffs brought this suit in equity after tender of a deed. In *Dunn v. Mackey*, 80 Cal. 104, a case similar to this in most aspects, the Supreme Court of California intimated that the plaintiff might have treated the contract as obligating defendant to pay the money and upon tendering the deed, have maintained an action for the whole sum, but that he was not bound to do so but could sue at law for his damages and retain his land. Granting that plaintiffs might have pursued this course (without expressing an opinion), still the action would be one at law for a specific sum of money. But the plaintiffs did not bring an action at law but prayed for a decree that the lands might be sold at public vendue; that a decree be entered against defendant for the sums of money aforesaid with interest as stipulated in the agreement; that the proceeds of the sale less the expenses incident thereto be credited on the debt and in satisfaction of the judgment and for other proper relief. The circuit court declined a decree of

sale and we think correctly. The plaintiffs were not entitled to a decree to have their own land sold and the expenses of a judicial sale added to defendant's debt. Evidently they proceeded upon the assumption that defendant had an interest in the land that could be sold but it is certainly well settled that he did not. Massey had no interest in this land. He merely had a contingent interest in the proceeds which might result from a sale of the lands. Unless the lands realized more than the $4,000 and ten per cent interest he had nothing. If they brought more his interest was simply a half of the profits over and beyond the $4,000 and interest. "An interest in that which is produced by the exercise of a power is not sufficient. The power must be engrafted on an interest in the property on which the power is to be exercised and not an interest in the money derived from an exercise of the power." *State ex rel. Walker v. Walker*, 88 Mo. 279; *Hunt v. Rousmanier*, 8 Wheat. 174; *Barr v. Schroeder*, 32 Cal. 609; *Coffin v. Landis*, 46 Pa. St. 431; *Blackstone v. Buttermore*, 53 Pa. St. 266; *Hartley's Appeal*, 53 Pa. St. 212.

The basis of this supposed equity then was the right to foreclose the interest of defendant in the land but as there was no such interest, it is apparent that plaintiffs' claim after all is simply an action for the difference in money between the value of the land and the sum guaranteed, and upon such an issue the right of trial by jury is preserved by our Constitution. Const. of 1875, art. 2, sec. 28. But this is not all. The eighteen months under the contract expired May 27, 1890. Mr. Brown died in April, 1893. This action for specific performance was commenced in December, 1893. Mr. Brown did not, within the eighteen months, elect to have Massey make good his warranty or guaranty. Massey had been offered $8,000 for the land.

He rejected it and told Brown about it and the latter approved his decision. Both were hopeful of realizing large profits. Each was behaving honorably and leniently with the other. In June, 1892, over two years after the eighteen months had expired, no formal demand had been made that Massey should assume the debt and take the land. In the meantime the value of the land was steadily decreasing. This action was brought three years and a half after the maturity of the contract. A decree for specific performance of a contract for the sale of real estate does not go as a matter of course because there is a binding legal contract between the parties, but it is granted or withheld according as the equity of the case, in view of all the facts, demands. In a country like ours and about the time this agreement was made, when values were fluctuating and speculation was rife, it would be most inequitable to permit parties to lie by and speculate on their own contracts.

There is nothing that reflects in the most remote degree upon the absolute integrity of Mr. Brown, and without doing so, it is plain this land was bought by him as a speculation. It is perfectly apparent that both he and Massey thought they had a good investment. After the eighteen months had elapsed had this property advanced in value, even up to the bringing this action, Brown or his devisees were in a condition to avail themselves of such appreciation. They were in fact waiting to see the outcome. The property having greatly declined they ought not to complain if a chancellor remits them to their remedy at law. Whatever the purpose of this delay its effect is the same. There is no waiver or excuse for delay pleaded. In the meantime conditions have so changed that the circuit court adjudged it inequitable to enforce the option by specific performance and we think it was right. Had,

Mr. Brown promptly elected to have Massey make good his guaranty, Massey might have then disposed of the land with small loss; as it is now, it has depreciated one half at least in value.

It only remains to notice that the court excluded a copy of a supposed letter from Brown to Massey of date September 12, 1891. It was not shown that this copy was in Brown's handwriting; nor taken from his letter press book; nor that it was made by his clerk or secretary whose business it was to make it. It was produced in court, and Massey disavowed all recollection of it. Then it was offered without any explanation as to its origin or custody. It was clearly incompetent and no error occurred in excluding it. 1 Wharton's Ev., sec. 133.

The decree of the circuit court is affirmed.

SHERWOOD and BURGESS, JJ., concur.