R. Shad BENNETT, Respondent,

v.

TOWER GROVE BANK AND TRUST COMPANY, Appellant.

No. 30203.

St. Louis Court of Appeals.

Missouri.

June 16, 1959.

Robert J. Gaddy, St. Louis, for appellant.

R. Shad Bennett, Clayton, pro se, for respondent.

SAMUEL A. DEW, Special Commissioner.

The respondent (plaintiff) sued the appellant and the defendant Mutual Bank & Trust Company, banking corporations, to recover for what he denominated as a conversion of respondent's check and proceeds thereof, and for punitive damages, interest and attorneys' fees. The case was tried without a jury. The court gave judgment for respondent and against appellant in the principal sum of $3,650, accrued interest in the amount of $408.50, and punitive damages $1,000, a total of $5,058.50, plus costs. From that judgment this appeal is taken. The court further found the issues in favor of the defendant Mutual Bank & Trust Company, from which ruling and judgment no appeal was taken.

The respondent has filed a motion in this court to dismiss the appeal on the ground that appellant has failed to make a fair and impartial statement of the facts in its brief, as provided by the rules of court. This court deferred action on this motion to await consideration of the whole case after submission. The motion does not specify the matters complained of nor is it accompanied by any suggestions in its support. The facts of this case, mostly undisputed, consist very largely of correspondence and other documentary evidence set forth in whole or in substance in the statement. We believe the statement was substantially in compliance with Supreme

Court Rule 1.08(a) (2 and 3), (b), 42 V.A. M.S. The motion to dismiss the appeal is overruled.

The undisputed evidence is that the respondent is a practicing attorney, residing in St. Louis County, Missouri. At all times in question he represented Laurel Francis Stewart, who conducted business under the name of the Stewart Auto Body Company. Stewart was laboring under financial difficulties and was threatened with bankruptcy. The appellant was pressing Stewart for payment of $3,634.42, which amount appellant claimed he, as a depositor, had overdrawn his account. On account of the recent death of Stewart's bookkeeper, respondent believed his client's accounts were in an uncertain state and felt that an investigation might save him from bankruptcy. He desired an inspection of Stewart's canceled checks and records at the appellant bank. He indicated to appellant that he might possibly be willing to furnish his own personal security for appellant's claim against Stewart, pending such investigation.

Pursuing the suggestion of respondent's personal security for its claim against Stewart, appellant wrote respondent on July 26, 1956, referring to a proposed agreement enclosed, which appellant requested respondent to examine and, if approved, to sign and return to appellant with his check. The proposed agreement was enclosed and called for a remittance of respondent's check to appellant to be used to open an account at the appellant's bank in respondent's name in the sum of $3,634.42, which deposit account would not be subject to withdrawal by any person pending the agreement; opportunity to be afforded respondent to satisfy himself as to the correctness of the Stewart account, but that at the expiration of four months from date, appellant to have the absolute right to apply respondent's account to the Stewart overdraft; that no adjustments were to be made in the Stewart account unless it be determined by appellant to its' satisfaction that the overdraft was in a lesser amount.

The above proposed agreement was rejected by the respondent. However, on July 31, 1956, respondent drew his personal check on his own bank, defendant Mutual Bank & Trust Company, for $3,650, payable to the appellant, containing on its reverse side the following typewritten words: "For deposit to the account of R. Shad Bennett in conformity with concurrent letter directing said deposit." This check he enclosed and mailed to appellant in a letter written by him and dated August 1, 1956. The letter was as follows:

"August 1, 1956
"Tower Grove Bank and Trust Co.
"Grand Blvd. and Hartford Street
"St. Louis, Missouri
"Re: R. Shad Bennett Account: $3650.00
"Re: Stewart Auto Body Company Over-draft
"Gentlemen:
"Enclosed find check in the above named sum which you may place to my account and send me receipt therefor if the following conditions are acceptable to you.

"It is understood and agreed by the undersigned that this account may be held as security for any overdraft in the Stewart Auto Body account.

"That the undersigned shall have the same privilege to audit and question the accuracy of the accounts that the Stewart Auto Body Company, or the representatives of the Bankrupt Court would have to audit the same account, provided; however, that the undersigned shall specify the items of the account that he challenges on or before December 1, 1956.

"The undersigned further agrees that the account of R. Shad Bennett shall be held frozen or otherwise made secure until the determination of the accuracy of the Stewart Auto Body Company account is completed.

"If these terms and conditions are agreeable to you, place the enclosed check to my account and return to me

all the canceled checks and statements that are now due the Stewart Auto Body.

"If these conditions are not satisfactory, return the enclosed check to me and proceed as you deem advisable.

     "Yours very truly,
       "R. Shad Bennett, Atty.
"RSB/mg
Encl."

Admittedly the above letter and check from respondent were received by appellant the next day, August 2, 1956. Promptly, upon receipt, the vice-president of appellant endorsed respondent's check "Pay in Cashier's check. Endorsement Guaranteed. Tower Grove Bank & Trust Co. (Signed) E. Von Doersten, Vice-President". He then took it to respondent's bank on the same day and obtained in its stead a cashier's check for the same amount, payable to the appellant, with nothing shown on the cashier's check to identify the transaction involved except the notice made thereon by the defendant Mutual Bank & Trust Company, reading: "Remitter, R. Shad Bennett." Respondent's personal account at the defendant Mutual Bank & Trust Company, (to which respondent was in no way indebted) was thereupon promptly charged with his check for $3,650, all without his knowledge.

On the evening of the same day, August 2, 1956, after appellant had negotiated respondent's check and had obtained in lieu thereof the described cashier's check, appellant's vice-president mailed a letter to respondent as follows:

      "August 2, 1956
"Mr. R. Shad Bennett, Attorney
"1300 Grant Road
"Webster Groves 19, Missouri

"Dear Mr. Bennett:
  "We have your letter of August 1st, and it will be agreeable except for the fourth paragraph.
  "If you will put a comma after the word completed and add

"'provided however, it is agreed that the bank shall make application of the amounts due on the over-draft of the Stewart Auto Body Company account in any event by December 1, 1956.'

"If you will be good enough to have your stenographer rewrite this letter adding that part therein, we will accept the letter as written. Sample copy of the letter intact is enclosed.

"With kindest regards, I am
      "Very truly yours,
      "s/ E. Von Doersten
   "Vice President and Treasurer
"EVD:s
enc."

Enclosed with appellant's above letter of August 2, 1956, was an unsigned rewrite of respondent's letter of August 1, 1956, (including even the date), setting forth the same conditions under which the check might be used, except that there was added to the fourth paragraph the insert proposed in appellant's accompanying letter, above quoted.

Respondent, unaware that his check had already been cashed at his bank and exchanged for a cashier's check, replied August 6, 1956, as follows:

      "August 6, 1956

"Tower Grove Bank & Trust Co.
"Grand and Chippewa
"St. Louis, Missouri

  "Re: Account, R. Shad Bennett $3650
  "Re: Stewart Auto Body account

"Gentlemen:
  "Your proposition relative to transferring my account to the Stewart Auto Body account on December 1, regardless of my disputing the accuracy of your computations, is wholly unacceptable and you will please return my check.
      "Yours very truly,
      "R. Shad Bennett, Atty.
"RSB:gp,."

Appellant ignored the last above quoted letter. On November 23, 1956, respondent, having learned that his check had been cashed and charged to his account and that his bank had issued a cashier's check to appellant therefor, wrote to defendant Mutual Bank & Trust Company, demanding that it stop payment immediately upon the cashier's check. This request was likewise ignored. Thereupon, on November 29, 1956, respondent wrote appellant that unless the cashier's check was returned to his account at his bank or the sum thereof was paid to respondent directly within five days, proceedings would be brought for "wrongful withholding" and "unlawful misappropriation" of same, plus damages, interest and other liability arising out of the misappropriation of his check.

This last communication was also disregarded by appellant, which, on the contrary, on December 4, 1956, endorsed and cashed the cashier's check at respondent's bank and appropriated the entire proceeds thereof. This suit was thereafter instituted on January 18, 1956.

█ The appellant's first point is that the court erred in finding the issues against it and in respondent's favor for the reason that the evidence showed it had unconditionally accepted respondent's offer contained in his letter of August 1, 1956, and was lawfully entitled to the possession of the fund represented by the check for the purpose stated in respondent's letter accompanying it.

It is difficult to give serious consideration to appellant's contention that it unconditionally accepted respondent's written terms for the retention and use of his check. This defense is urged in the very face of appellant's own letter of August 2, 1956, after it had negotiated respondent's check without his knowledge, in which letter it pointed out in what respect it *did not* agree with the terms stipulated by respondent, and requested a precise and material alteration, stating that if that were done, "We will accept the letter as written." Appellant, of course, did not return

the respondent's check pending the requested alteration of the contract for the reason that it had already surrendered the check and cashed it at respondent's bank without his knowledge.

Appellant advances the theory that respondent's "offer" called only for performance as evidence of acceptance; that appellant's request for an amended agreement could not change the effect of actual performance; that no further notice of acceptance was required. Appellant further insists that the purpose was to secure the Stewart account, and that there was no substantial difference between holding respondent's check or frozen account, and holding a cashier's check for which it was exchanged. Appellant declares that its demand for an amended agreement on respondent's part must be considered as a mere "abortive" attempt to alter or modify an existing agreement. Citations are supplied by appellant on the subject of notice of acceptance of an offer by performance, and on the subject of abortive attempts to alter contracts.

Respondent was not indebted in any way to the appellant. Stewart, its depositor, was the debtor. For the mere limited privilege of examining the canceled checks and statements pertaining to Stewart's account, respondent personally volunteered to secure appellant's claim for Stewart's overdraft, but only upon the express conditions set forth in the letter accompanying respondent's check for $3,650. A condition of that agreement was to return the check if the agreement was not satisfactory. The appellant was only entitled to retain the check under the plain terms so specified. It did not accept the proffered terms, nor did it return the check or its proceeds, nor did it open a deposit account in respondent's name, but negotiated the check while seeking a more favorable agreement, and finally cashed the cashier's check, appropriating its proceeds to its own use.

█ In discussing the elements of a binding contract, it was said in Dobbins v. City Bond & Mortgage Company, 343

Mo. 1001, 124 S.W.2d 1111, 1116: "The parties must have a distinct intention, common to both, and without doubt or difference. Unless all the parties understand alike there can be no assent and therefore no contract. Both parties must assent to the same thing in the same sense and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode is agreed upon by which it may be settled, there is no agreement. Huttig v. Brennan, 328 Mo. 471, 41 S.W.2d 1054; 13 C.J. 263, par. 48." The law was succinctly stated as follows in Cottonseed Delinting Corp. v. Roberts Bros., Inc., Mo., 218 S.W.2d 592, 594: "It is fundamental that, to have a contract, there must be a meeting of the minds of the parties, so there must be both a definite offer and an unequivocal acceptance. (citations)." See, also, Brown v. Childers, Mo.App., 254 S.W.2d 275, 281; Williston on Contracts, Vol. 1, Section 45, page 131; 12 Am.Jur., Contracts, Section 23, page 519.

There was no valid counter-offer made by appellant, as contended, even though "abortive" as appellant concedes. At the time it proposed an alteration of the conditions authorizing it to retain and deposit respondent's check, appellant had already, without respondent's knowledge, parted with it in exchange for an unconditional, negotiable cashier's check payable to itself. It would serve no purpose to discuss the numerous authorities cited by appellant on its erroneous concept of the legal issues involved under this point. The court was correct in finding the issues in respondent's favor.

Appellant next contends that the court erred in finding that there was a conversion of respondent's check to its own use, and that he was entitled to actual and punitive damages. Appellant again relies on his theory that the evidence did not prove that it had rejected respondent's offer; that it received and treated the check as intended and authorized by respondent. We have fully considered and disapproved that theory under Point I.

Appellant further argues that a relationship of debtor and creditor arose between it and respondent, as between a bank and its depositor. On that premise it cites authorities to the effect that under the relationship of bank and depositor, money deposited loses its identity and cannot be the subject of conversion. Here again, the appellant's failure to receive, retain and deposit the check on the conditions stipulated by the respondent, prevented any legal relationship of bank and depositor from ever coming into existence.

Appellant cites and relies on three cases decided by this court: In United States Fidelity & Guaranty Co. v. Mississippi Valley Trust Co., Mo.App., 153 S.W.2d 752, 757, the individual who misappropriated trust funds had a personal deposit in the defendant bank and, as guardian of the estate of two minors also maintained a guardianship account in the same bank. Upon receipt of a large check payable to him as guardian, he endorsed it and deposited it in his individual account. The surety on his bond sued the bank for the amount alleged to have been converted by the guardian, on the theory that it aided and abetted the conversion of the plaintiff's funds. The court construed the action rather as one for money had and received which, the court said, was an action in assumpsit, which the court said was an action " * * * on a contract implied by law and for a consideration received, as distinguished from a suit for tort or for the breach of an express contract." Thereupon, on the principle that the relationship between a depositor and a bank is that of debtor and creditor, the court held that a deposit in a bank is in the nature of a loan to the bank whether imposed with a trust or not, " * * * provided the act of depositing is no misappropriation of the fund." The court said that if the action were treated as a common law action for conversion, it would not lie to recover the proceeds of the check. The court pointed out (153 S.W.2d at page 757) that the check was negotiable; that the bank did not benefit by the deposit being in

one account instead of another; that the bank had no knowledge of the misappropriation and there was no charge of bad faith on the part of the bank.

In R. H. Kobusch Furniture & Carpet Co. v. Loewenberg, 194 Mo.App. 551, 185 S.W. 747, a vice president with authority to draw checks to pay the obligations of his employer, including his own salary, was charged with having drawn a check on the plaintiff's account for more money than was due him for salary and with converting the balance to his own use. No part of the balance sought was set apart or marked or identified from other money. There was no evidence that the check was entrusted to the defendant for any particular purpose. The court ruled that the case was one rather for money had and received, or in assumpsit, and that trover or conversion lies only to recover specific property.

Under the authority of the Kobusch case, supra, the decision in Anderson Electric Car Co. v. Savings Trust Co., 201 Mo.App. 400, 212 S.W. 60, was rendered. In that case it was alleged that the plaintiff was the owner of a certain check payable to it and that " * * * defendant came into possession of the check 'as a trust company'," endorsed it and appropriated the proceeds to its own use and benefit. Neither the pleadings nor the opinion in the case disclosed any of the facts or circumstances under which the defendant "came into possession" of the check. Citing the Kobusch case, supra, the court held the suit was for conversion, not for the check, but for the money charged to have been collected on it; that mere failure to return money would not be a technical conversion, but rather ground for an action for money had and received.

In United States Fidelity & Guaranty Co. v. Mississippi Valley Trust Co., supra, the suit was plainly to recover money paid out to a depositor who deposited it in another account in the same bank. The relationship of bank and depositor existed; no benefit accrued to the bank by the transfer of funds from one account to another, and the act of depositing in neither account was evidence of knowledge on the part of the bank of any misappropriation. Such facts, of course, are distinguished from the evidence in the instant case.

In the R. H. Kobusch Furniture & Carpet case, supra, the employee had the authority to draw checks on his employer's account and to disburse the proceeds in payment of the firm's obligations, including his own salary. The excess wrongfully withdrawn and kept by the defendant lost its identity. It is evident that the gist of the case was a claim to such part of the proceeds of the check as exceeded the amount owing to the defendant, rather than a proceeding to recover the check or its value.

The court held in the Anderson case, supra, that it was a suit to recover, not the check involved, but its proceeds, but the circumstances under which the bank obtained possession of the check are not disclosed.

The gist of the case at bar is that while appellant was given temporary possession of respondent's check pending appellant's prompt decision whether to retain and use it on the terms specified or to return it at once, the appellant declined to accept such terms, but nevertheless, assumed full control and dominion over the check and disposed of it to the respondent's damage in the full amount of the check. Upon demand, appellant failed to return the check, failed to surrender the cashier's check for which it had exchanged it, and used the value of both for its own purposes.

It was said in Kansas City Casualty Co. v. Westport Ave. Bank, 191 Mo.App. 287, 177 S.W. 1092, 1093: "A conversion is 'any distinct act of dominion wrongfully exerted over one's property, in denial of his right, or inconsistent with it'. 2 Cooley on Torts, 859. Personal property, as understood in these definitions, includes choses in action, such as notes, bills, checks, and other representatives of value; for a representative of value is itself a thing of

value. * * * And the measure of damages is prima facie the face value of the paper converted. (citations)."

It is said in Knipper v. Blumenthal, 107 Mo. 665, 18 S.W. 23, 24: "Here the plaintiff alleges, and the evidence shows, a conversion by defendant's intestate of the proceeds of the notes. A lengthy argument is made that this is an action of trover, and it is sought to apply to it the old technical rules of practice in regard to that form of action. In our state we have but one form of action, and the plaintiff is simply required to make a concise statement of the facts upon which he seeks to recover. The plaintiff in the case at bar stated facts which, if true, entitled her to the relief she asked. Upon proper instructions, the jury found the facts thus alleged to be true, and we therefore think the judgment ought to be affirmed, which is accordingly done."

Whether or not the parties in the instant case considered this cause of action to be one for conversion of his check or for recovery of the proceeds thereof, is not determinative of the plaintiff's right to recover. "Plaintiff is not bound by the designation of its case as being one in the nature of a bill of interpleader. The case is whatever the pleadings and the facts make it, regardless of what name plaintiff gave it." W. A. Ross Const. Co. v. Chiles, 344 Mo. 1084, 130 S.W.2d 524.

In McCafferty v. Clay, Mo.App., 18 S. W.2d 569, 571, this court recognized that: "The legal character of a pleading or paper filed in a case should be determined from its substance and effect, and not from its name", citing Calman v. Cox, Mo.App., 296 S.W. 845.

■ We conclude, as did the trial court, that under the facts in evidence and under the law, the respondent pleaded and proved an action for the relief prayed. See Good Roads Machinery Co. v. Broadway Bank, Mo.App., 267 S.W. 40. The plain fact is that the respondent's check was wrongfully retained, wrongfully negotiated for a cashier's check, which was wrongfully cashed and the proceeds thereof wrongfully used by the appellant for its own benefit. For such unlawful conduct the measure of damages is the amount of the check so retained and used. Good Roads Machinery Co. v. Broadway Bank, supra.

■ The appellant asserts that the court erred in allowing punitive damages to the respondent. It claims that the evidence showed a course of good faith on its part "predicated upon its prompt overt acceptance of Bennett's offer." As we have pointed out the uncontradicted evidence shows otherwise. The appellant knew when it negotiated respondent's check that it had not accepted the conditions on which it was given possession; it knew when it later wrote to respondent that whether or not respondent would accept the suggested changes in the terms, which he refused, that it could not possibly return the check, it having already lost control over it by sending it to respondent's bank in exchange for a negotiable cashier's check. It knew that the respondent was unaware that his check had already been cleared and collected from his own bank; it knew that it had not opened an account in his name, for which purpose the check was entrusted to it if the terms were agreed to. It ignored the respondent's later plea and demand that the check or the cashier's check for which it was wrongfully exchanged be delivered to him when he found out that appellant had negotiated his check against his private account, and, finally, with total disregard for respondent's rights, it cashed the cashier's check and kept and used the proceeds thereof. It would be difficult to find precedent for a case containing more of the elements of malice required for the assessment of exemplary damages. The court did not err in assessing the punitive damages in this case. State ex rel. United Factories v. Hostetter, 344 Mo. 386, 126 S.W.2d 1173; Lampert v. Judge & Dolph Drug Co., 238 Mo. 409, 141 S.W. 1095, 37 L.R.A.,N.S., 533; Bourne v. Pratt & Whitney Aircraft Corp. of Mo., Mo.App., 207

**50**

S.W.2d 533; Hodges v. Schuermann Building & Realty Co., Mo.App., 174 S.W.2d 909.

The judgment should be affirmed. The Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DEW, Special Commissioner, is adopted as the opinion of the Court. The judgment is accordingly affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.